**STATE of Minnesota, by MINNE-APOLIS PARK LOVERS, et al., Appellants,**

v.

**CITY OF MINNEAPOLIS, Lake Calhoun Associates, an Illinois general partnership, Respondents.**

**No. C9-90-2055.**

Court of Appeals of Minnesota.

April 23, 1991.

Thomas H. Goodman, Kathleen A. Connelly, Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, for appellants.

Robert J. Alfton, Minneapolis City Atty., Michael T. Norton, Asst. City Atty., Minneapolis, for respondent City of Minneapolis.

Linda L. Holstein, Christopher K. Sandberg, Opperman, Heins & Paquin, Minneapolis, for respondent Lake Calhoun Associates.

Seymour J. Mansfield, Eric T. Cooperstein, Mansfield & Tanick, Professor Ann M. Burkhart, University of Minnesota Law School, Minneapolis, for amici curiae E.L.E.C.T., et al.

Considered and decided by
FORSBERG, P.J., and PARKER and
AMUNDSON, JJ.

## OPINION

FORSBERG, Judge.

Appellant Minneapolis Park Lovers brought an action to enjoin respondent City of Minneapolis (the City) from issuing a permit authorizing respondent Lake Calhoun Associates to construct a high-rise, residential building near Lake Calhoun in Minneapolis. Lake Calhoun Associates moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and Minneapolis Park Lovers moved for summary judgment.

The district court determined the City council's actions were not unreasonable, and therefore the conditional use permit remained valid. The court granted Lake Calhoun Associates' motion to dismiss and denied Minneapolis Park Lovers' summary judgment motion. We reverse.

## FACTS

In 1981, Lake Calhoun Associates (L.C.A.)[1] began the process of developing a major residential housing project[2] on a parcel of real estate (the site) it owned near Lake Calhoun in Minneapolis. On January 25, 1985, the City council granted a conditional use permit for the project. On January 10, 1986, the City's zoning administrator advised L.C.A. its conditional use permit would not expire if L.C.A. obtained a street use permit, submitted an application for a building permit, and included preliminary site plans. On January 14, L.C.A. obtained a street use permit. On January 22, the zoning administrator approved the building permit and site plans, and determined the conditional use permit would remain effective for one year from the date of its issuance.

L.C.A. proceeded to develop final plans for City approval. In April 1986, the City issued an excavation permit. In July, City staff approved the final plans. On October 22, L.C.A. obtained a foundation and piling permit, and some underground pilings were driven at the site. In December, the mayor and City council approved the redevelopment site plan.

Further work was not undertaken because an adjacent landowner obtained a temporary injunction preventing any construction interfering with certain easements. In February 1987, the City, through the Minneapolis Community Development Agency (M.C.D.A.), sought to take the easements through eminent domain.

1. L.C.A. is the successor to the site's previous owner and would-be developer during the early 1980's, United Development Company. L.C.A. and United will be referred to collectively as L.C.A.

2. The project consists of three high rise condominium buildings, 30 stories, 25 stories and 20 stories in height, containing 560 residential units.

The district court rejected the City's attempt to condemn the easements in August 1987. The easement litigation has since been resolved.

In June 1988, L.C.A. sold the site property to Lincoln Property (Lincoln). Lincoln and L.C.A. proposed a joint venture consisting of two towers to accommodate the easements. On July 12, 1988, the zoning administrator, pursuant to an opinion of the City's planning department, advised L.C.A. and Lincoln that the new plan was acceptable without further concept review. In February 1989, Lincoln defaulted on the contract for deed and the property reverted to L.C.A., which decided to develop the site itself.

On April 12, 1989, the zoning administrator advised L.C.A. the conditional use permit was no longer valid because it failed to establish the conditional use. L.C.A. appealed this decision to the City council, which held public hearings considering the validity of the conditional use permit.

The City council, by a 10–3 majority, held the previously approved conditional use permit remained valid. However, their approval was conditioned on L.C.A. filing proper plans with the City. City staff reviewed the new plans and determined they complied with the terms of the original conditional use permit. Based on this determination, the 1985 conditional use permit remained in full force and effect.

In October 1989, Minneapolis Park Lovers (M.P.L.S.)[3] sued to stop construction of the project. The City answered, while L.C.A. moved to dismiss the complaint for failure to state a claim upon which relief can be granted. M.P.L.S. made a cross-motion for summary judgment on count II of its complaint, concerning the expiration of the conditional use permit.

Since the district court considered matters outside the pleadings, L.C.A.'s motion was treated as a motion for summary judgment pursuant to Minn.R.Civ.P. 12.02. The district court denied M.P.L.S.'s motion for summary judgment and granted L.C.A.'s motion to dismiss the complaint. M.P.L.S. appeals from the judgment entered in favor of L.C.A. and the City.

## ISSUES

1. Did the district court err by not reviewing the decision of the City council de novo, where the City council interpreted an existing ordinance and applied it to the facts?

2. Did the City council err in determining the conditional use permit remained valid?

## ANALYSIS

On appeal from summary judgment, the appellate court determines whether there are any genuine issues of material fact, and whether the trial court erred in its application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989).

■ 1. The district court properly had jurisdiction to review the City council's decision. Minn.Stat. § 462.361, subd. 1 (1988), provides:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 and 462.364 may have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy in the district court, * * *.

The question presented here is what is the proper standard of review under this statute.

The district court applied the following standard, which is applicable to review of all zoning matters:

> whether the zoning authority's action was reasonable * * *. Is there a 'reasonable basis' for the decision? or is the decision 'unreasonable, arbitrary or capricious'? or is the decision 'reasonably debatable'?

**3.** M.P.L.S. is a nonprofit corporation which was formed primarily to stop the project in this case. The stated purpose of M.P.L.S. is to protect and improve the quality of life and the environment in Minneapolis, and to protect neighborhoods from the harmful effects of overcrowding and inappropriate development.

*Swanson v. City of Bloomington,* 421 N.W.2d 307, 311 (Minn.1988) (quoting *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 417 (Minn.1981)).

■ We believe the district court misunderstood the scope of the question before it. The issue did not involve a zoning matter, but rather the interpretation of an ordinance. The proper standard of review of a city's interpretation of an existing ordinance is a question of law for the court. *See Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). Cases restricting the district court's review of a city's decision to a determination of whether it was "arbitrary and capricious" involve fact-finding or policy-making powers, and therefore do not control in this case. *See, e.g., Honn v. City of Coon Rapids,* 313 N.W.2d at 416–17.

The City council determined, *under existing City ordinances,* the conditional use permit issued to L.C.A. had not expired. The district court erred by not reviewing the actions of the City council de novo. Therefore, M.P.L.S.'s complaint must be reinstated.

■ 2. Since the City council's interpretation of the zoning code is not binding on this court, we undertake independent review. *Oswalt v. County of Ramsey,* 371 N.W.2d 241, 247 (Minn.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985). The City council determined the 1985 conditional use permit issued to L.C.A. did not expire. However, M.P.L.S. argues the conditional use permit lapsed under each of three City ordinances containing one year expiration or invalidation provisions for such permits. These include:

A. Minneapolis, Minn., Code of Ordinances § 522.160 (1976), which provides a conditional use permit:

shall become null and void unless *work thereon is underway* within one year of the issuance of such permit by the zoning administrator.

(Emphasis added.)

B. Minneapolis, Minn., Code of Ordinances § 534.410 (1988), which provides:

In any case where a conditional use has not been *established* within one year after the date of granting thereof, then without further action by the commission, or the city council, the conditional use or authorization shall be *null and void.*

(Emphasis added.)

C. Minneapolis, Minn., Code of Ordinances § 522.170 (1976), which provides:

A conditional use permit shall be deemed to authorize only one particular conditional use and shall expire if the conditional use *shall cease for more than one year for any reason.*

(Emphasis added.)

Whether "work" was underway within one year of the issuance of the conditional use permit, as required by section 522.160, and whether a use was "established" within one year, as required by section 534.410, need not be considered in this case. We conclude the conditional use permit expired under section 522.170, because the conditional use, even if established, ceased for more than one year.

The City issued a conditional use permit to L.C.A. on January 25, 1985. Construction could not commence until issues relating to the easements were resolved. Litigation ensued in 1987 and was not concluded until 1989. Even if the use for the site was "established," for at least several years, no use was made of the site. This brings the case well within the purview of section 522.170.

The reasons for cessation of the use are irrelevant. Section 522.170 clearly provides a conditional use permit shall expire if the conditional use ceases for more than one year "for any reason." We find no exception to the rule which provides tolling the one-year limit for purposes of litigation.

Public policy considerations also mandate our conclusion that the conditional use permit expired. Requiring a new application for a conditional use permit allows the City and the public to review the new application based on updated information and under current conditions. To hold otherwise would frustrate the purpose of time limitations in the ordinances. If a developer's

conditional use permit expires, it must apply for a new conditional use permit under the presently existing conditions.

As a matter of law, the conditional use permit issued by the City to L.C.A. in 1985 expired and is no longer valid. We order summary judgment on count II of the complaint, concerning the expiration of the conditional use permit.

## DECISION

The district court erred in applying a reasonableness standard to the decision of the City council. The court should have undertaken a de novo review to determine whether the conditional use permit expired. It was therefore error to dismiss the complaint in its entirety, and the complaint must be reinstated. We hold the conditional use permit issued by the City to L.C.A. expired because the conditional use ceased for more than one year. We therefore grant summary judgment on count II of the complaint.

Reversed.